**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JANE DOES 1-12, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. CIV-21-_797-C_____ |
| v. | ) | |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT NO. | ) | |
| 51 OF GRADY COUNTY, OKLAHOMA, | ) | |
| a/k/a NINNEKAH PUBLIC SCHOOLS; | ) | **JURY TRIAL DEMANDED** |
| | ) | **ATTORNEYS' LIEN CLAIMED** |
| ELEMENTARY SCHOOL DISTRICT NO. | ) | |
| 37 OF GRADY COUNTY, OKLAHOMA, | ) | |
| a/k/a FRIEND PUBLIC SCHOOLS; | ) | |
| | ) | |
| JIM WEIR, in his official capacity as | ) | |
| Sheriff of Grady County; | ) | |
| | ) | |
| MICHAEL TODD BUNCH, individually; | ) | |
| | ) | |
| CHARLES YACKEYONNEY, individually; | ) | |
| | ) | |
| DAVID PITTS, individually; | ) | |
| | ) | |
| GLEN SHOEMAKE, individually; | ) | |
| | ) | |
| PHILLIP BLEVINS, individually;  and | ) | |
| | ) | |
| TAMMARA GARRETT, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

---

**TRIGGER WARNING:**
**THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION**
**OF MENTAL AND PHYSICAL CHILD ABUSE**

---

**COME NOW** Plaintiffs Jane Does # 1-12 and, for their causes of action against Defendants Independent School District No. 51 of Grady County a/k/a Ninnekah Public Schools; Elementary School District No. 37 of Grady County, Oklahoma, a/k/a Friend Public Schools; Jim Weir, in his official capacity as Sheriff of Grady County; Todd Bunch, individually; Charles Yackeyonney, individually; David Pitts, individually; Glen Shoemake, individually; Phillip Blevins, individually; and Tammara Garrett, individually, allege and state as follows:

<u>The Parties</u>

1.      Plaintiff Jane Doe # 1 is a female over the age of 19 and is currently a citizen of the State of Oklahoma and a resident of this judicial district. Jane Doe # 1 was a student at Defendant Friend Public School.

2.      Plaintiff Jane Does # 2 -8 are females over the age of 18 but under the age of 19 and each Jane Doe, # 2-8, is currently a citizen of the State of Oklahoma and a resident of this judicial district. Jane Does # 2-8 were all students at Ninnekah High School.

3.      Plaintiff Jane Does # 9-12 are females under the age of 18 and each Jane Doe, # 9-12, is currently a citizen of the State of Oklahoma and a resident of this judicial district. Jane Does # 9-12 were all students at Ninnekah High School.

4.      Defendant Independent School District No. 51 of Grady County, a/k/a Ninnekah Public Schools ("NPS") is an independent school district organized under the laws of the State of Oklahoma with its principal place of business in this judicial district.

5.     Defendant Elementary School District No. 37 of Grady County, Oklahoma, a/k/a Friend Public Schools ("FPS") is an elementary school district organized under the laws of the State of Oklahoma with its principal place of business in this judicial district.

6.     Defendant Jim Weir is the duly elected Sheriff of Grady County, State of Oklahoma, and is sued in his official capacity only.

7.     Defendant Todd Bunch is the current Superintendent of Ninnekah Public Schools. Bunch is a citizen of the State of Oklahoma and a resident of this judicial district. Bunch is currently named as the Title IX "District Decision" although he has personally participated in covering up the sexual assault, discrimination, and harassment that occurred as described in full below. Bunch is sued in his individual capacity only.

8.     Defendant Charles Yackeyonney is a former employee of Defendant Ninnekah Public Schools. Yackayonney was employed as a teacher and assistant girl's basketball coach from 2014-2021. When Yackeyonney received his administrator's certificate in or around 2015, he was named as the Title IX coordinator because Defendant Bunch wanted to provide him with an administrative title that he considered to be a title type role only. Defendant Yackeyonney resigned from Ninnekah in 2021 and accepted employment at Lawton Public Schools. Yackeyonney is sued in his individual capacity only.  Upon information and belief, Yackeyonney remains a citizen of the State of Oklahoma and a resident of this judicial district.

9.     Defendant David Pitts is the Principal of Ninnekah High School, a position he has held, upon information and belief, since at least 2014. Pitts remains a citizen of the State of Oklahoma and a resident of this judicial district.

10.     Defendant Glen Shoemake is a former employee of Defendant Ninnekah Public Schools. Shoemake was employed as the Athletics Director and the Junior High Principal. Shoemake retired in 2021. Shoemake is sued in his individual capacity only. Upon information and belief, Shoemake remains a citizen of the State of Oklahoma and a resident of this judicial district.

11.     Defendant Phillip Blevins is a former Deputy in the Grady County Sheriff's Department. Upon information and belief, Blevins resigned in lieu of termination due to the danger he created for Jane Does # 1-12 by failing to take seriously allegations of a sexual relationship between Ronald Akins and a non-party to this suit, C.M. Upon information and belief, Blevins is currently employed at Canadian County Sheriff's Office, State of Oklahoma, and he remains a citizen of the State of Oklahoma and a resident of this judicial district.

12.     Upon information and belief, Defendant Tammara Garrett is a former employee of Defendant Ninnekah Public Schools. Garrett held multiple roles, including Middle School Secretary, Substitute Teacher, and Chaperone for the Girls Basketball Teams. Garrett remains a citizen of the State of Oklahoma and is a resident of this judicial district.

<u>Factual Allegations</u>

13.     Defendant Friend Public Schools employed Ronald Gene Akins during the years 2005 through 2013. Akins was employed as a teacher and girls basketball coach.

14.     Beginning in 2009, Akins began to sexually assault Jane Doe # 1. Akins began by isolating Jane Doe # 1 in the school gym and, when he believed the time was

right, Akins asked Jane Doe # 1 words to the effect of, "What would you do if I kissed you?" Jane Doe # 1 froze and did not know how to respond, because at the time she was thirteen (13) years old.

15.     Thereafter, Akins escalated his child sexual predatory behavior. During Jane Doe # 1's eighth (8th) grade year, when she was 13 or 14, Akins, at separate times:

- Physically pulled Jane Doe # 1 into him, hugged her, and then pulled his body away, looked at her in the face, and kissed her with an open mouth and tongue;

- Approached Jane Doe # 1 from behind, came up behind her, placed both hands under her shirt and bra, and groped her breasts;

- Approached Jane Doe # 1 and forcibly stuck his hand down her pants and digitally penetrated her and forced her hand down his pants to touch his penis. Akins was wearing track pants so the waistband was elastic.

16.     While the predator, Ronald Akins, was employed at Defendant Friend Public Schools, another teacher at the school entered his classroom and a young female student (note that Friend Public Schools is a K-8 elementary school district only) jumped out of Akins' lap. The teacher reported the incident to administration, but she was reprimanded and told she was going to ruin a man's life and reputation. The teacher was directed to never speak of this again.

17.     In 2015, Jane Doe # 1 reported predator Akins' actions and conduct described above in paragraph 14 to the Grady County Sheriff's Department. Defendant Phillip Blevins received her report or was assigned to investigate her report. Jane Doe # 1 also provided Blevins with a piece of paper on which Akins had written, "I love you," and slipped in her eighth-grade locker.

18.    Defendant Blevins told Jane Doe # 1 that the District Attorney would never prosecute Akins without a corroborating witness, which he described as another girl who had been sexually assaulted.

19.    In or around 2018, Jane Doe # 1 learned of another victim of the predator Ronald Gene Akins. This victim, C.M., is not a party to this suit.

20.    Jane Doe # 1 contacted Defendant Blevins and told him about victim C.M., however, upon information and belief, Defendant Blevins took no action to follow up on this report. However, Defendant Blevins explicitly told Jane Doe # 1 that the investigation was still pending and open.

21.    In approximately 2013, the predator, Ronald Akins, resigned from Defendant Friend Public Schools and became employed by Defendant Ninnekah Public Schools.

22.    Upon information and belief, Defendant Friend Public Schools did not notify Defendant Ninnekah Public Schools of any issues or concerns about Akins, despite its administration's explicit knowledge that a young female student had been sitting in a coach's lap.

23.    Shortly after Akins became employed at Defendant Ninnekah Public Schools, in the 2014-2015 school year, Akins targeted another victim who is not a party to this suit, C.M., who is referenced above.

24.    In or around October 2014, C.M. became Akins' teacher's aide. Akins began making weird flirtatious comments to C.M., including that he had a "crush" on her. Akins quickly escalated his behavior by:

- Waking C.M. up from a nap by giving her a kiss on the mouth;

- Shoving his hand down her pants and attempting to digitally penetrate her;

- Attempting to rape C.M.

25.     All of the incidents that C.M. suffered at the hands of predator Ronald Akins occurred on the property of Ninnekah Public Schools.

26.     C.M. reported to Defendant David Pitts that Akins kissed her. However, Pitts stated to C.M. words to the effect of, "There's nothing we can do. It's your word against his." Pitts did not commence any investigation.

27.     From and after October 2014, students, teachers, and administrators, including Defendants Garrett, Pitts, Yackeyonney, and Bunch, became aware of allegations that Akins had a sexual relationship with C.M.

28.     Despite their knowledge of these allegations, Defendants Garrett, Pitts, Yackeyonney, and Bunch never conducted an investigation and failed to report the allegation to DHS and/or law enforcement.

29.     Defendants Yackeyonney, Pitts, and Bunch became aware of allegations that Akins began dating C.M.'s family member, and that the family member discovered text messages between Akins and C.M. that upset her. However, Defendants Yackeyonney, Pitts, and Bunch failed to conduct any investigation and failed to report the allegation to DHS and/or law enforcement.

30.     In or around 2015, with all of the knowledge described above, Defendant Bunch became aware that the Grady County Sheriff's Department was conducting an

investigation into an allegation against Akins involving a student. This involved Jane Doe # 1. Bunch recently wrote in text message communications as follows:

- "Approximately 4 years ago my HS principal [believed to be Defendant Pitts] called my office and said a deputy showed up at the school to talk to Ron [Akins]. The principal ask what it was regarding and the deputy said simply 'an allegation' he [sic] ask involving a student and he [the Deputy] said 'yes' other than that he wouldn't elaborate. I had the principal call Ron in and ask about it of course he denied there being anything to it and blew it off. Fast forward about a week I had the principal reach out to the deputy and ask if there was any validity or anything we needed to know. He said 'no' that there was no evidence or witnesses but if there was any 'complaints' to please call him."

31.     Upon information and belief, the Deputy that came to Ninnekah Public Schools in or around 2015, was Defendant Phil Blevins.

32.     Defendants Bunch and Pitts, despite their knowledge of allegations involving Akins and C.M. at this same time, took no action to investigate these issues other than to ask the predator himself, one time, if he did anything wrong. As Bunch described aptly in his text message communication, "of course he denied" it.

33.     Another female student who is not a party to this case, K.B., heard allegations while she was in high school (2014-2018) that Akins had been sleeping with C.M. while she was a student. Akins began complimenting K.B. about her performance and effort, but as she was not responsive to his advances, it changed to calling her by a sexualized nickname.

34.     When K.B. was Akins' teacher's aide, Akins, while they were alone in his office, sat next to K.B. and told her that he had a big crush on her and that he had always

had a crush on her. When she did not respond positively, Akins quickly backtracked, stating, "Just kidding."

35.     Shortly after this, K.B. called another player on the team a "bitch." Akins reported this to K.B.'s father; when Akins and her father confronted her about it, K.B. alluded to Akin's recent comment about having a crush on her. Akins made up a lie to cover up what she was referencing, but because she quietly stood up for herself, Akins never benched K.B. as he had threatened, in order to protect himself and his sick secrets.

36.     During K.B.'s time at Ninnekah Public Schools, Defendant Tammara Garrett believed and suspected that K.B. was engaging in inappropriate contact with Akins. Garrett was wrong, as Akins did not ever progress to the point of trying to make sexual contact with K.B. However, Garrett believed that *K.B.* was at fault for this. Defendant Garrett has recently stated in Facebook messages as follows, in reference to allegations and concerns that Akins was having inappropriate relationships with students during 2014-2018:

- "I said that I could not confirm or deny what was going on because it happened with more than one and my first hand knowledge could be just as damming for the students as him. . . . And as I recall I told you [K.B.] several times that it did not give a good appearance for you to be in his office with a closed door. I told him [Akins] as well."

37.     Defendant Garrett had actual knowledge about the high potential for inappropriate conduct between Akins and female students who were in his office alone. Defendant Garrett was hired by Defendant Bunch as the Chaperone for the girls basketball team *because the coach and assistant coach were both males.* Despite her knowledge and concerns, Garrett did not make any report to law enforcement or DHS.

38.     In 2015, Defendant Ninnekah Public Schools did not have any Title IX policies in place.

39.     According to at least one witness, Defendant Bunch held a meeting wherein the rumors of Akins and C.M. were addressed and minimized.

40.     In 2016 or 2017, Jane Does # 10 and 11 were reprimanded by Defendant Shoemake for calling Akins a "pedophile." At the time, Jane Does # 10 and 11 were in middle school. Shoemake told Jane Doe # 10 that, he knew there was a relationship between Akins and a former student, but it was only after she graduated. This was reference to C.M.

41.     Contrary to his statement to Jane Doe # 10, Defendant Shoemake knew that there were serious allegations that the "relationship" started while C.M. was a student. For example, after his retirement, Shoemake had a text message string with another former employee stating:

- Former Employee: "We got out just in time."

- Defendant Shoemake: "Yep!"

- Former Employee: "Wish I was surprised."

- Defendant Shoemake: "I know. I want to text Todd [Bunch] a big old I TOLD YOU SO!"

- Former Employee: "I know! I think Pepper is stressed again."

42.     Defendant Shoemake knew that there were serious and credible allegations of Akins having a sexual relationship with one or more students, and he informed Bunch.

However, rather than reporting this to DHS or law enforcement, Shoemake stayed silent and reprimanded Jane Does # 10 and 11.

43.     In fact, as a punishment, Shoemake required Jane Does # 10 and 11 to write out a letter to Akins and deliver it to him in apology for making the comment that Akins was a pedophile. This occurred as stated above in 2016-2017.

44.     During the 2017-2018 school year, rumors regarding C.M. (who had graduated) and Akins persisted at Ninnekah Public Schools. During a basketball practice on one occasion, a female student who is not a party to this lawsuit stated that she believed she would need to sleep with Akins to get more playing time.

45.     This comment was reported to Akins, who brought it to the attention of Defendant Pitts. Rather than conduct any investigation into this long-standing, serious allegation that had spread throughout the Ninnekah high school community, Pitts held a meeting with some of the girls basketball team members wherein he said things such as, "False accusations can ruin someone's reputation." Pitts' efforts were to quash any further reporting of the offending behavior.

46.     Amazingly, Defendant Pitts **brought Akins to this meeting**, wherein Defendant Pitts then asked the female team members present if they wanted to raise any complaints about Akins, again in an effort to quahs any further reporting.

47.     During this same time frame, in other words 2017-2018 (and beyond to 2021), Akins was actively engaging in the following conduct with Jane Does # 2-12:

- Patting them on their butts;

11

- Requiring them during practice to "block him out" by pushing their butts directly into him, which he enjoyed in a lewd and lascivious manner;

- Making inappropriate sexual comments about their bodies;

- Making inappropriate sexual jokes in their presence;

- Telling them that he would treat them better than their boyfriends; and

- Physically and sexually touching students.

48.     This behavior was frequent and Akins engaged in this behavior during the entirety of his time at Ninnekah Public Schools, 2014-2021.

49.     Akins was also actively grooming more victims by developing close, inappropriate relationships with them and taking advantage of their trust, inexperience and vulnerability.

50.     In or around January 2019, Jane Doe # 2 began to take his behavior towards her further than he had in the past. At the time, Jane Doe # 2 was sixteen (16) years old, a sophomore in high school, and member of the basketball team.

51.     Akins sexually assaulted Jane Doe # 2 in the following manner:

- While Jane Doe # 2 was in Akins' office with him alone, by sticking his hand up her shirt and grabbing her breast under her bra;

- While Jane Doe # 2 was in Akins' office with him alone, by kissing her on the neck, pushing his hand down her pants, and rubbing her over the top of her panties, but Jane Doe # 2 prevented him from continuing by grabbing his arm;

- While Jane Doe # 2 was alone with Akins in his vehicle, age 17, by placing his hand down her pants and digitally penetrating her;

12

- While Jane Doe # 2 was alone with Akins in his vehicle, age 17, by placing his hand down her pants and digitally penetrating her;

- While Jane Doe # 2 was alone with Akins in his vehicle, age 17, by kissing her and placing his hand down her pants and digitally penetrating her. Akins asked Jane Doe # 2 if she had had sex before.

52.    Akins actions and statements made Jane Doe # 2 scared that, if she did not go along with him, he would not help her get a college scholarship.

53.    Akins made statements to Jane Doe # 2 such as, when she moved to college he would move and start coaching in that area.

54.    Akins also received explicit images and texts from Jane Doe # 2, which he admitted at the time of his arrest.

55.    At the end of Jane Doe # 2's high school career, she attempted to end any further contact with Akins. Akins, in retaliation, took action resulting in her college coach withdrawing her scholarship.

56.    Defendant Yackeyonney, Defendant Bunch, and Defendant Pitts were aware that Akins had taken such action.

57.    Jane Doe # 10, during the 2019-2020 school year, after a basketball practice at the Chesapeake Energy Arena, noticed that Jane Doe # 2 and Akins stayed in the school bus while the other team members went inside to eat. Jane Doe # 10 reported this to Defendant NPS employee Amy Howell. Howell stated, "There's nothing we can do."

58.    In addition to his sexual assault of Jane Doe # 2, Akins also preyed on Jane Doe # 3 during this same time frame of 2017-2020, while Jane Doe # 3 was fifteen, sixteen and seventeen years old.

13

59.     Akins told Jane Doe # 3 that he loved her, and then one day he pulled her into his office and gave her a kiss on the forehead.

60.     When Jane Doe # 3 was approximately 15 to 16 years old, she was helping Akins put up uniforms and Akins came up behind her, stuck his hand down her pants, and into her panties. Akins digitally penetrated Jane Doe # 3.

61.     When Jane Doe # 3 was approximately 17 years old, Akins kissed her on the lips with an open mouth using his tongue, stuck his hands down her pants, and made her get on her knees. Akins forced Jane Doe # 3 to perform oral sex on this and other occasions, all of which occurred on Ninnekah Public School grounds.

62.     Akins did not stop at engaging in forcible sexual penetration of these young girls. He also engaged in emotional torment. For example, Akins – in the presence and with the laughing approval of Defendant Yackeyonney – would tell Jane Doe # 3 about how her mother was attractive, and that they were going to "bang" Jane Doe # 3's mother.

63.     Defendant Yackeyonney, as the ostensible Title IX Coordinator during this time frame of 2015-July 2021, had an obligation and a duty to ensure that such discrimination did not occur in the school environment.

64.     Defendant Yackeyonney, himself, also pursued Jane Doe # 8 in an effort to groom her for a sexual relationship. When Jane Doe # 8 was under 18, and working at a local restaurant, Yackeyonney would eat at the restaurant and leave Jane Doe # 8 with large cash tips. Yackeyonney ate at the restaurant on at least five occasions, and on each occasion he left a $100.00 cash tip for Jane Doe # 8.

65.     In addition, Defendant Yackeyonney engaged in further grooming by developing a personal relationship with Jane Doe # 8. He was in frequent communication with her sending her images of himself (clothed) asking for her opinion about his ties *etc.* He also sent other memes and images in an attempt to flirt with and establish a relationship with Jane Doe # 8.

66.     Upon information and belief, Defendant Yackeyonney sought a sexual relationship with Jane Doe # 8.

67.     On or around August 23, 2020, Jane Doe # 1 sent a Facebook Messenger message to Defendant NPS Board Member Delanie Berry. In the message, Jane Doe # 1 was somewhat vague because Defendant Blevins advised her previously she may be sued for defamation of character. In the message, Jane Doe # 1 stated: "Hi Delanie, I'm sorry to bother you on a Sunday but I've been meaning to reach out to you lately. I was advised to talk to you about a sensitive matter by a parent and a teacher at ninnekah. If you are open to talking, I would love to connect with you." Berry never responded.

68.     In summer 2021, Jane Doe # 2 learned that Akins was grooming and targeting Jane Doe # 12 for a sexual relationship. Akins said things to Jane Doe # 12 such as, "You're pretty and you need to smile more." He waited for her after practices to change, and then he walked her to lunch. Akins also said to her, "You will be the next [Jane Doe # 2]."

69.     Akins provided Jane Doe # 12 special treatment and privileges because he wanted to earn her trust and form a bond, so that he could target her for his prurient sexual gratification.

70.     When Jane Doe # 2 learned of this, Jane Doe # 2 revealed her trauma to her family and a report was made to Grady County Sheriff's Office. Grady County Deputy B. Gornick began an investigation and has performed his duties fairly and aggressively in seeking out the truth.

71.     When Gornick initiated the investigation, Defendant Blevins was an employee of Defendant Jim Weir, Sheriff. Gornick confirmed through his search of Grady County records that Blevins' entire investigative file relating to Jane Doe # 1's 2015 and 2018 reports—including the love note Akins wrote to Jane Doe # 1—was missing.

72.     As a result of Jane Doe # 2's report of Akins' sexual predation to Grady County, Akins was arrested and charged with multiple felony crimes involving young girls. Specifically, Akins was charged with 2 counts of sexual battery in violation of 21 O.S. § 1123(B) and 2 counts of Rape by Instrumentation in violation of 21 O.S. § 1111.1.

73.     On or around Saturday, June 26, 2021, after Akins was arrested, Jane Doe # 2's father had a telephone conversation with Defendant Bunch. In the telephone call, Bunch admitted that a sheriff's deputy had come to the school year's before to discuss concerns about Akins. Additionally, Bunch explicitly referenced C.M. as a part of the concerns that had been raised at the school previously involving Akins.

74.     Defendants Bunch, Yackeyonney, Pitts, Shoemake, Blevins, and Garrett, all had actual knowledge of a substantial risk of harm to female basketball teammembers at Ninnekah High School, a substantial risk of harm posed by Akins. Despite this knowledge, they took no appropriate action to address the threat and exposed Jane Does # 2-12 to a sexually hostile education environment.

16

## COUNT I
## <u>VIOLATION OF FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983</u>

1.      Plaintiffs incorporate by reference the above and foregoing allegations as though set forth in full herein.

2.      The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deprive any person of life, liberty, or property, without due process of law" and that no State shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

3.      It is and was at all relevant times clearly established law in the Tenth Circuit that public officials acting under color of law and school districts "can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996).

4.      It is and was at all relevant times clearly established law in the Tenth Circuit that public officials acting under color of law and school districts can be held liable for sexual harassment and sexual assault by public school teachers is a violation of the equal protection clause. *See, e.g., Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

5.      This count is brought by Plaintiffs Jane Doe # 2 – 12 against Defendants Friend Public Schools, Ninnekah Public Schools, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett.

6.      Defendants Bunch, Yackeyonney, Pitts, Shoemake, and Garrett acted under color of law at all relevant times.

7.     Defendant Friend Public Schools' employees and agents acted under color of law at all relevant times.

8.     Plaintiffs Jane Does # 2-12 were each subjected to a severe or pervasive hostile educational environment that interfered unreasonably with their school performance and created a hostile or abusive educational environment.

9.     Defendant Friend Public Schools' unknown administrative employee(s) and Defendants Bunch, Yackeyonney, Pitts, Shoemake, and Garrett created the danger or increased Jane Does # 2 – 12's vulnerability to danger, in that the Defendants' deliberate indifference to credible reports that Akins engaged in a sexual relationship with one or more students, both at Defendant Ninnekah and at Defendant Friend Public Schools, allowed Akins to continue preying on Plaintiffs with impunity.

10.     Jane Does # 2 – 12 were members of a limited and specifically definable group, *i.e.* underage members of the Ninnekah High School girls' basketball team under the supervision of Akins.

11.     Defendant Friend Public Schools' unknown administrative employee(s) and Defendants Bunch, Yackeyonney, Pitts, Shoemake, and Garrett's conduct put Jane Does # 2 – 12 at substantial risk of serious, immediate, and proximate harm.

12.     This risk of serious, immediate, and proximate harm was obvious and/or known by each of the Defendants identified in this Count.

13.     Defendant Friend Public Schools' unknown administrative employee(s) and Defendants Bunch, Yackeyonney, Pitts, Shoemake, and Garrett's conduct, when viewed in total, is conscience shocking.

14.     Defendant FPS and NPS had an unconstitutional custom or policy of:

    a.     Failing to report criminal misconduct;

    b.     Failing to investigate criminal misconduct;

    c.     Discounting the credibility of adolescents' allegations; and

    d.     Failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of adolescents.

15.     The custom or policy is attributable to a policymaker.

WHEREFORE, premises considered, Defendants FPS, NPS, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett actions as described above resulted in Plaintiffs Jane Does # 2 – 12 suffering severe bodily injury, emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation. Plaintiffs pray for judgment against the Defendants FPS, NPS Bunch, Yackeyonney, Pitts, Shoemake, and Garrett for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332 plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

## COUNT II
## VIOLATION OF TITLE IX

16.     Plaintiffs incorporate by reference the above and foregoing allegations as though set forth in full herein.

17.     This count is brought by Plaintiffs Jane Does # 2 – 12 against Defendant Ninnekah Public Schools.

18.     Defendant Ninnekah Public Schools receives Federal financial assistance.

19.     Defendant Ninnekah Public Schools' disregard of the sexual misconduct of Akins was so severe and objectively offensive that it deprived Jane Does # 2 – 12 of educational opportunities and benefits provided by their public schooling.

20.     Defendant Ninnekah Public Schools created and/or subjected Jane Does # 2 – 12 to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), because:

      a.     Jane Does # 2 – 12 were members of a protected class;

      b.     Jane Does # 2 – 12 were subjected to sexual harassment in the form of sexual pursuit and sexual misconduct by a person employed by Defendant NPS and on and off school grounds;

      c.     Jane Does # 2 – 12 were subjected to harassment based on their sex;

      d.     Jane Does # 2 – 12 were subjected to retaliation.

21.     Plaintiffs were subjected to a hostile educational environment created by Defendant NPS's lack of policies and procedures and failure to properly investigate and/or report sexual misconduct.

22.     Defendant NPS and its officials and employees had knowledge, including actual knowledge, of the sexual misconduct and the resulting harassment Plaintiffs suffered as a result of Defendant NPS's failure to notify law enforcement or DHS.

23.     Teachers, principals, the Title IX coordinator, and the superintendent are appropriate persons to receive complaints for purposes of a Title IX claim.

24.     Akins' misconduct was a substantial danger and risk to Defendant NPS's female students.

25.     Defendant NPS had evidence of more than a single, uncorroborated report of inappropriate touching of a female student by Akins.

26.     The harassment suffered by Plaintiffs was severe, pervasive, and objectively offensive, as made evident by Akins feloniously touching multiple victims on multiple occasions.

27.     Further, Defendant NPS had actual notice of Akins' misconduct via communications to its employees, who were all acting within the course and scope of their employment.

28.     Defendant NPS acted with deliberate indifference by failing to properly investigate Plaintiffs' allegations and to inform law enforcement or other governmental officials. Defendant NPS's inactions were clearly unreasonable in light of the known circumstances.

29.     Defendant NPS's actions and inactions caused students, including Plaintiffs, to undergo further misconduct by Akins and made them vulnerable to that misconduct.

30.     Defendant NPS persisted in its action and inaction even after it had actual knowledge of the harm suffered by its students.

31.     Defendant NPS's failure to promptly and appropriately respond to the alleged sexual harassment and sexual misconduct resulted in Plaintiffs Jane Does # 2 – 12, on the basis of their sex, being excluded from participation in, being denied the benefit of, and being subjected to discrimination in Defendant NPS's education program in violation of Title IX.

32.     Defendant NPS failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults. Instead, Defendant NPS acted with deliberate indifference toward Plaintiffs Jane Does # 2 – 12.

33.     Defendant NPS's response was clearly unreasonable in light of the circumstances known to them.

34.     Defendant NPS's actions, including, but not limited to its failure to effectively and immediately investigate Akins' misconduct, to send students who alleged misconduct back to Akins' gym where Akins was present, to abjectly disbelieve multiple students, and to threaten students who disclosed Akins' misconduct was not reasonable responses to the substantial risk of sexual misconduct.

35.     Defendant NPS dismissed and marginalized allegations of Akins' sexual misconduct.

36.     In response to allegations of Akins' sexual misconduct, Defendant NPS did not conduct a legitimate investigation.

37.     Defendant NPS's subjective assessment of Akins' victims' credibility was an insufficient investigation in light of the facts reported to Defendant NPS.

38.     Defendant NPS could have exercised its inherent authority over school property to immediately prohibit Akins from entering school property and abusing Plaintiffs. It did not.

39.     Defendant NPS engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from sexual misconduct within the school district.

40.    Plaintiffs Jane Does # 2 – 12 have suffered physical pain, emotional distress, and psychological damage.

WHEREFORE, premises considered Defendant NPS's actions were the direct and proximate cause of Plaintiffs Jane Does # 2 – 12 being deprived of a safe and harassment-free educational environment. As a result of Defendant NPS's actions and inactions, Plaintiffs have suffered and continue to suffer severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

**COUNT III**
**VIOLATION OF U.S. CONSTITUTION AND 42 U.S.C § 1983**

41.    Plaintiffs incorporate by reference the above and foregoing allegations as though set forth in full herein.

42.    The Fourteenth Amendment to the United States Constitution provides in part that no State shall "deprive any person of life, liberty, or property, without due process of law" and that no State shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

43.    It is and was at all relevant times clearly established law in the Tenth Circuit that public officials acting under color of law and public entities "can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996).

44.    It is and was at all relevant times clearly established law in the Tenth Circuit that public officials acting under color of law and public entities can be held liable for

sexual harassment and sexual assault by public school teachers is a violation of the equal protection clause. *See, e.g., Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

45.     This count is brought by Plaintiffs Jane Does # 1 – 12 against Defendants Sheriff Jim Weir and Phillip Blevins.

46.     Plaintiffs Jane Does # 1-12 were each subjected to a severe or pervasive hostile educational environment that interfered unreasonably with their school performance and created a hostile or abusive educational environment.

47.     Defendant Weir and/or Blevins created the danger or increased Jane Does # 1 – 12's vulnerability to danger, in that the Defendants' deliberate indifference to credible reports that Akins engaged in a sexual relationship with one or more students, both at Defendant Ninnekah and at Defendant Friend Public Schools, allowed Akins to continue preying on Plaintiffs with impunity.

48.     Jane Does # 1 – 12 were members of a limited and specifically definable group.

49.     Defendant Weir and Blevins' conduct put Jane Does # 1 – 12 at substantial risk of serious, immediate, and proximate harm.

50.     This risk of serious, immediate, and proximate harm was obvious and/or known by each of the Defendants identified in this Count.

51.     Defendants Weir and Blevins' conduct, when viewed in total, is conscience shocking.

52.     Defendant Weir, Sheriff's Office of Grady County, had an unconstitutional custom or policy of:

a.      Failing to report criminal misconduct;

b.      Failing to investigate criminal misconduct;

c.      Discounting the credibility of adolescents' allegations; and

d.      Failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of adolescents.

53.     The custom or policy is attributable to a policymaker.

WHEREFORE, premises considered, Defendants Weir and Blevins's actions as described above resulted in Plaintiffs Jane Does # 2 – 12 suffering severe bodily injury, emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation. Plaintiffs pray for judgment against these Defendants for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332 plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

54.     Plaintiffs incorporate by reference the above and foregoing allegations as though set forth in full herein.

55.     This count is brought by Plaintiffs Jane Does # 1 – 12 against Defendants Blevins, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett.

56.     Defendants Blevins, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett acted intentionally or recklessly.

57.     Defendants Blevins, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett's conduct was extreme and outrageous.

58.     Defendants Blevins, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett's conduct caused the Plaintiffs' emotional distress.

59.     The resulting emotional distress was severe.

WHEREFORE, premises considered Defendant Blevins, Bunch, Yackeyonney, Pitts, Shoemake, and Garrett's actions were the direct and proximate cause of Plaintiffs Jane Does # 1 – 12 being subjected to intentional infliction of emotional distress. As a result of Defendant's actions and inactions, Plaintiffs have suffered and continue to suffer severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

Dated this 13th day of August, 2021.

/s/ Cameron Spradling
CAMERON SPRADLING, OBA #8509
500 North Walker Avenue, Suite 140
Oklahoma City, OK 73102
Phone: (405) 605-0610
Fax: (405) 605-0615
Cameron@CameronSpradling.com

-and-

J. David Ogle, OBA# 17476
Greg S. Mitchell, OBA#17675
Babbitt, Mitchell & Ogle
9905 South Pennsylvania Ave.
Oklahoma City, OK 73159
Telephone: (405) 692-7676
Facsimile: (405) 692-7670
david@bmolawok.com

greg@bmolawok.com

-and-

Barrett T. Bowers, OBA# 30493
THE BOWERS LAW FIRM
1611 N. Broadway Ave.
Second Floor
Oklahoma City, Oklahoma 73103
(405) 768-2907 - Office
(405) 727-7188 – Cell
barrett@bowerslawok.com
*Attorneys for Plaintiffs Jane Does # 1-12*